IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY GILLIS and WENDY GILLIS, individuals, | ) ) | CASE NO: 2:16-cv-01285-MRH |
| | ) ) | Hon. Mark R. Hornak, District Judge |
| Plaintiffs, | ) ) | |
| v. | ) ) | Electronically filed |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, an Ohio Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6)

And now comes the Defendant, State Automobile Mutual Insurance Company (hereinafter "State Auto"), by its attorneys, Chester A. Dudzinski and  Edward A. Schenck of Cipriani & Werner, P.C., and files the following Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6):

1.     The Complaint alleges that the Plaintiffs (Randy Gillis and Wendy Gillis) experienced a catastrophic loss on April 29, 2016 as a result of a gas explosion from a pipeline located on their farm property located at 113 Gillis Lane, Greensburg, PA  15601.  Paragraph 1 of Complaint.

2.     The alleged damages suffered by the Plaintiffs as a result of this gas explosion include: "property damage to the rental property in excess of the coverage limits, property damage to the crops, fields and land, investigation costs and other costs related to crop destruction pursuant to 42 Pa. C.S.A. §8313, lost earnings and earning capacity of the farm land, loss of rental income, property damage to the family home at 113 Gillis Lane and other farm

1

buildings and equipment, inconvenience and discomfort, loss of use and enjoyment of their property, and diminution in value of their property." Paragraph 6 of Complaint.

3. The Plaintiffs were insured under a Preferred Farm and Ranch insurance policy with State Auto at the time of the subject loss. Paragraph 1 of Complaint.

4. The coverages on this policy include dwelling coverage of $280,100 on the primary dwelling (113 Gillis Lane) and $179,600.00 on the tenant dwelling; private structures coverage of $28,010 on the primary dwelling and $17,960.00 on the tenant dwelling; personal property coverage of $196,100 on the primary dwelling; loss of use coverage of $56,020 on the primary dwelling and $35,920.00 on the tenant dwelling; coverage on the barns, farm buildings and structures totaling $106,000.00; and scheduled farm personal property coverage of $33,000.00.

5. It is alleged in the Complaint that State Auto has paid the Plaintiffs $185,700.76, which is less than the policy limits and less than the amount of the claim. Paragraph 8 of Complaint.

6. It is alleged in the Complaint that State Auto informed Plaintiffs that it intended to enforce subrogation rights against the tortfeasor immediately following payment. Paragraph 9 of Complaint.

7. The exhibits to the Complaint indicate that the alleged tortfeasor is Spectra Energy.

8. It is alleged that the Plaintiffs have informed State Auto that its policy of insurance is insufficient to make them whole, and until they are made whole by the tortfeasor, State Auto has no subrogation right or interest to pursue. Paragraph 10 of the Complaint.

9.      Attached to the Complaint are emails and correspondence between the attorney for the Plaintiffs and subrogation counsel of State Auto at Cozen O'Connor setting forth the respective positions of State Auto (that the made whole doctrine is not applicable in situations where there are sufficient funds to satisfy both the insured and the insurer) and the Plaintiffs (full compensation to the Plaintiffs by the tortfeasor is a condition precedent to State Auto's right of subrogation, and that the made whole doctrine applies without regard to the solvency of the tortfeasor).

10.      The Complaint sets forth two causes of action.   The first cause of action is summarized in paragraph 26 of the Complaint as follows:  "State Auto has asserted a subrogation interest, and imminently intends to enforce that interest against the tortfeasor(s) and Mr. and Mr. Gillis, before Mr. and Mrs. Gillis have been made whole, in direct violation of Pennsylvania law."

11.      The second cause of action is alleged bad faith based on State Auto attempting to assert a subrogation interest before the Plaintiffs have been made whole and by communicating with the tortfeasor about its subrogation claim.

12.      The State Auto policy under General Conditions (see page 28 of 33 of policy) provides the following as to subrogation:

> 9.  Subrogation.  With our permission an "insured" may waive in writing before a loss all rights of recovery against any person.  If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.  If an assignment is sought, an "insured" must:
>
> a.  Transfer those rights to us;
> b.   Sign and deliver all related papers and cooperate with us;
> c.  Do nothing after loss to impair our rights;
> d.  At our request, bring suit; and

     e.  Pay us for any recovery you receive from another party
     for a property loss we pay to you or for you.

13.    Even when a subrogation claim arises out of a contract, equitable principles continue to apply.

14.    Subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss.

15.    Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the tortfeasor) any amounts previously paid by the subrogee to the subrogor.

16.    The made whole doctrine both ensures that the insured is fully compensated for his or her injury before the insurer recovers, in cases where there are insufficient funds to satisfy both the insured and the insurer, and prevents the insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer.

17.    *Jones v. Nationwide Property and Casualty Ins. Co.* 32 A.3d 1261 (Pa. 2011) makes clear that the made whole doctrine is only applicable in cases where there are insufficient funds to satisfy both the insured and the insurer and that if an insured decides not to insure a particular loss, the made whole doctrine is not applicable.

18.    The derivative nature of the right to subrogation may establish the unity and identity of the insurer's interest with that of the insured, but only until the insurer pays the insured's claim.  Once payment is made, the unity of the insurer's interest with that of its insured is eliminated, rendering the parties' interest in litigation qualitatively dissimilar.

19.     Marked as Exhibit A to this Motion are the public announcements issued by Spectra Energy, the alleged tortfeasor, as to the subject gas explosion.  These announcements are a matter of public record.

20.     Spectra Energy is a multi-billion dollar corporation.  See Exhibit B to this Motion which is Form 10-Q that Spectra Energy filed with the United States Securities and Exchange Commission.  A court can take judicial notice of properly-authenticated public disclosure documents filed with the SEC.

21.     In short, the alleged tortfeasor has sufficient liability coverage and/or assets to cover both the insurer's and/or insured's claims.

22.     There is no contractual mandate and no equitable reason in this case for State Auto to delay its subrogation right when it is apparent that the alleged tortfeasor has sufficient funds to make both it and its insured whole.  The made whole doctrine is simply not applicable in situations where there are sufficient funds to satify both the insured and insurers.

23.     Additionally, to the extent that the Plaintiffs are claiming losses not covered by insurance, the made whole doctrine is not applicable.

24.     State Auto's subrogation interest is a separate claim from that of the Plaintiffs, and State Auto can pursue its subrogation claim with counsel of its own choosing.

25.     The allegation in the Complaint is that State Auto "imminently intends" to enforce its subrogation interest against the tortfeasor.  This case is not ripe for judicial review until such time as State Auto actually enforces its right of subrogation against the tortfeasor.

26.     The elements of a statutory claim for bad faith are set forth at 42 Pa. C.S.A. §8371, which states as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)   Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)   Award punitive damages against the insurer.
>
> (3)   Assess court costs and attorney fees against the insurer.

27.   Section 8371 does not define "bad faith" or specify what insurer actions will give rise to liability, and the Pennsylvania Supreme Court has yet to address these issues.

28.   However, Pennsylvania courts have looked at whether the insurer lacked a reasonable basis for its actions and whether the insurer knew or recklessly disregarded its lack of a reasonable basis.

29.   Mere negligence or bad judgment is not bad faith.

30.   Bad faith claims are fact specific and depend on the conduct of the insurer vis a vis the insured.

31.   In the subject case, State Farm had a reasonable basis for its action based on the case law cited above.  Therefore, the bad faith allegations in the second cause of action should be dismissed.

32.   Whereas, the gist of the first cause of action of the Complaint involves State Auto's alleged imminent intent to enforce its subrogation rights against the alleged tortfeasor, which State Auto has a right to do, and whereas the gist of the second cause of action alleges that State Auto acted in bad faith by asserting that the made whole doctrine is inapplicable to the facts of this case, which is a legally correct assertion, the Complaint should be dismissed in its entirety.

For all of the above reasons, the Plaintiffs have failed to state a claim upon which relief can be granted and, consequently, both the first and second causes of action of the Complaint should be dismissed, with prejudice.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

Dated:  November 7, 2016                    By: _Edward a. Schenck_

Chester A. Dudzinski, Esquire
Pa. I.D. No. 53456
_cdudzinsk@c-wlaw.com_
Edward A. Schenck, Esquire
Pa. I.D. No. 36605
_eschenck@c-wlaw.com_
650 Washington Road, Suite 700
Pittsburgh, PA 15228
(412) 563-2500

*Attorneys for Defendant,*
*State Automobile Mutual Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned counsel for the Defendant, State Automobile Mutual Insurance Company, hereby certifies that a true and correct copy of the within ***Motion To Dismiss Plaintiffs' Complaint Pursuant To Rule 12(B)(6)*** has been served on all counsel of record, through the ECF system, according to the Federal Rules of Civil Procedure, on the _____7th_____ day of November, 2016, as follows:

Gretchen E. Moore, Esquire
Strassburger McKenna Gutnick & Gefsky
Four Gateway Center
444 Liberty Avenue, Suite 2200
Pittsburgh PA  15222

Respectfully submitted,

CIPRIANI & WERNER, P.C.

By: _Edward  A. Schenck_

Chester A. Dudzinski, Esquire
Edward A. Schenck, Esquire
*Attorneys for Defendant,*
*State Automobile Mutual Insurance Company*

8