IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY GILLIS and WENDY GILLIS, individuals, | ) ) ) | CASE NO: 2:16-cv-01285-MRH |
| | ) | Hon. Mark R. Hornak, District Judge |
| Plaintiffs, | ) ) | |
| v. | ) ) | Electronically filed |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, an Ohio Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6)

And now comes the Defendant, State Automobile Mutual Insurance Company (hereinafter "State Auto"), by its attorneys, Chester A. Dudzinski and Edward A. Schenck of Cipriani & Werner, P.C., and files the following Brief in Support of Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6):

## Standard of Review

In considering a Motion to Dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). In resolving a Motion to Dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the Complaint as well as "documents that are attached to or submitted with the complaint, [citation omitted], and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in

the record of the case.'"  *Buck v. Hampton Twp. School District,* 452 F.3d 256, 260 (3d Cir. 2006).

A district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007).  Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) Motion to Dismiss.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  A district court must identify "the 'nub' of the  plaintiffs' complaint – the well-pleaded, nonconclusory factual allegation[s]."  Id at 680.  Taking these allegations as true, the court must determine whether the Complaint states a plausible claim for relief.

## Allegations of the Complaint

The Complaint alleges that the Plaintiffs (Randy Gillis and Wendy Gillis) experienced a catastrophic loss on April 29, 2016 as a result of a gas explosion from a pipeline located on their farm property located at 113 Gillis Lane, Greensburg, PA  15601.  Paragraph 1 of Complaint. The alleged damages suffered by the Plaintiffs as a result of this gas explosion include: "property damage to the rental property in excess of the coverage limits, property damage to the crops, fields and land, investigation costs and other costs related to crop destruction pursuant to 42 Pa. C.S.A. §8313, lost earnings and earning capacity of the farm land, loss of rental income, property damage to the family home at 113 Gillis Lane and other farm buildings and equipment, inconvenience and discomfort, loss of use and enjoyment of their property, and diminution in value of their property."  Paragraph 6 of Complaint.

The Plaintiffs were insured under a Preferred Farm and Ranch insurance policy with State Auto at the time of the subject loss.  Paragraph 1 of Complaint.  A copy of the State Auto

insurance policy is attached as Exhibit 1 to the Complaint. The coverages on this policy include dwelling coverage of $280,100 on the primary dwelling (113 Gillis Lane) and $179,600.00 on the tenant dwelling; private structures coverage of $28,010 on the primary dwelling and $17,960.00 on the tenant dwelling; personal property coverage of $196,100 on the primary dwelling; loss of use coverage of $56,020 on the primary dwelling and $35,920.00 on the tenant dwelling; coverage on the barns, farm buildings and structures totaling $106,000.00; and scheduled farm personal property coverage of $33,000.00.

It is alleged in the Complaint that to date State Auto has paid the Plaintiffs $185,700.76, which is less than the policy limits and less than the amount of the claim. Paragraph 8 of Complaint. [Additional payments have been made by State Auto subsequent to the filing of the Complaint, and the sum stated in the Complaint does not include the recoverable depreciation which will be paid to the Plaintiffs when the dwelling repairs have been completed.]

It is alleged in the Complaint that State Auto informed Plaintiffs that it intended to enforce subrogation rights against the tortfeasor immediately following payment. Paragraph 9 of Complaint. The exhibits to the Complaint indicate that the alleged tortfeasor is Spectra Energy. It is alleged that the Plaintiffs have informed State Auto that its policy of insurance is insufficient to make them whole, and until they are made whole by the tortfeasor, State Auto has no subrogation right or interest to pursue. Paragraph 10 of the Complaint.

Attached to the Complaint are emails and correspondence between the attorney for the Plaintiffs and subrogation counsel of State Auto at Cozen O'Connor setting forth the respective positions of State Auto (that the made whole doctrine is not applicable in cases where there are sufficient funds to satisfy both the insured and the insurer) and the Plaintiffs (full compensation

3

to the Plaintiffs by the tortfeasor is a condition precedent to State Auto's right of subrogation, and that the made whole doctrine applies without regard to the solvency of the tortfeasor).

The Complaint sets forth two causes of action.  The first cause of action is summarized in paragraph 26 of the Complaint as follows:  "State Auto has asserted a subrogation interest, and imminently intends to enforce that interest against the tortfeasor(s) and Mr. and Mr. Gillis, before Mr. and Mrs. Gillis have been made whole, in direct violation of Pennsylvania law."  The second cause of action is alleged bad faith based on State Auto attempting to assert a subrogation interest before the Plaintiffs have been made whole and by communicating with the tortfeasor about its subrogation claim.

### Legal Argument

The State Auto policy under General Conditions (see page 28 of 33 of policy) provides the following as to subrogation:

> 9.  Subrogation.  With our permission an "insured" may waive in writing before a loss all rights of recovery against any person.  If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.  If an assignment is sought, an "insured" must:
>
> a.  Transfer those rights to us;
> b.  Sign and deliver all related papers and cooperate with us;
> c.  Do nothing after loss to impair our rights;
> d.  At our request, bring suit; and
> e.  Pay us for any recovery you receive from another party for a property loss we pay to you or for you.

In *Valora v. Pa. Employees Benefit Trust Fund,* 939 A.2d 312 (Pa. 2007), the Pennsylvania Supreme Court noted that the fact that a subrogation claim arises out of a contract

does not render equitable considerations irrelevant. In other words, even when a subrogation claim arises out of a contract, equitable principles continue to apply.

In *Jones v. Nationwide Property and Casualty Ins. Co.,* 32 A.3d 1261 (Pa. 2011), the Pennsylvania Supreme Court considered the legality of an insurance company's practice of reimbursing, on a pro rata basis only, an insured's deductible from funds obtained in an insurer's subrogation action against the third-party tortfeasor. Nationwide argued that the made whole doctrine did not apply because the Plaintiff was attempting to seek reimbursement from the insurer's recovery for an uninsured loss – her deductible. Nationwide argued that the Plaintiff could not provide any precedent for her claim that the made whole doctrine has been applied to allow the recovery of uninsured losses, including deductibles, before the insurer is entitled to reimbursement from the tortfeasor for the amount it paid for insured losses. Nationwide noted that Florida courts have rejected complaints brought by insureds seeking reimbursement for uninsured losses under the made whole doctrine. See, *Schonau v. GEICO General Insurance Company,* 903 So.2d 285, 257 (Fla. Dist. Ct. App. 4th Dist. 2005) (Appellant's "proposed application of the 'made whole doctrine' would effectively eliminate this entire body of Florida subrogation law, by forcing an insurer to cover uninsured losses before the insurer can pursue a subrogation claim.")

In discussing subrogation generally, the Supreme Court stated:

> We have repeatedly held that subrogation is an equitable doctrine intended to place the ultimate burden of a debt upon the party primarily responsible for the loss. *Valora,* 939 A.2d at 320. Subrogation allows the subrogee (in this case the insurer) to step into the shoes of the subrogor (the insured) to recover from the party that is primarily liable (the third-party tortfeasor) any amounts previously paid by the subrogee to the subrogor (in this case, the amount of damage to the vehicle less the deductible).

32 A.3d at 1270.

As to the made whole doctrine, the Supreme Court stated: "Our courts have explained that the made whole doctrine both ensures that the insured is fully compensated for his or her injury before the insurer recovers, <u>in cases where there are insufficient funds to satisfy both the insured and the insurer</u>, and prevents the insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer. *Gallop,* 616 A.2d at 1030." Underlining added.

After stating these general principles pertaining to subrogation and the made whole doctrine, the Supreme Court concluded, "Application of the made whole doctrine to deductibles would not only be contrary to the relevant MVFRL provisions but, when considering the inherent nature of deductibles, would run counter to the equitable principles underlying the made whole doctrine and subrogation."   35 A.3d at 1271.   The Court noted that with collision coverage, the insured contracts to accept the risk of the first portion of any loss by way of the deductible.  The deductible is the portion of an insured loss to be borne by the insured before he or she is entitled to recovery from the insurer.

In short, *Jones v. Nationwide Property and Casualty Ins. Co.* makes clear that the made whole doctrine is only applicable in cases where there are insufficient funds to satisfy both the insured and the insurer <u>and</u> that if an insured decides not to insure a particular loss, the made whole doctrine is not applicable.

In *AAA Mid-Atlantic Ins. Co. v. Ryan,* 84 A.3d 626 (Pa. 2014), the Pennsylvania Supreme Court quoted with approval the following language from its previous *Jones* decision in regard to the made whole doctrine:

> [The made whole doctrine] both ensures that the insured is fully compensated for his or her injury before the insurer recovers, <u>in cases where there are insufficient funds to satisfy both the insured and the insurer</u>, and prevents the

insured from receiving dual recovery for the same loss from both the tortfeasor and the insurer.

84 A.3d at 634.  Underlining added.

See also *Unitrin Auto and Home Ins. Co. v. Clayton Corporation of Delaware d/b/a Convenience Products,* 1:15–cv–02079–JEJ, Middle District of Pennsylvania, Memorandum and Order dated April 20, 2016 ("As an equitable principle, the made whole doctrine does not apply as a bar to subrogation where funds are sufficient to make both the insured and the insurer whole. See *Jones,* 32 A.3d at 1272.  Defendant [Clayton Corporation] has not shown that Plaintiff's [Unitrin Auto's] subrogation claim for amounts paid is likely to deprive the Barricks [the insureds] of full recovery on their loss.  Therefore, we find that the made whole doctrine does not bar Plaintiff's [Unitrin Auto's] Complaint.")

In *State Farm Mutual Auto Ins. Co. v. Ware's Van Storage,* 953 A.2d 568 (Pa. Super. 2008), the Pennsylvania Superior Court noted that the derivative nature of the right to subrogation may establish the unity and identity of the insurer's interest with that of the insured, but only until the insurer pays the insured's claim.  Once payment is made, the unity of the insurer's interest with that of its insured is eliminated, rendering the parties' interest in litigation qualitatively dissimilar.

In the subject case, a review of the policy and the coverages indicates that certain categories of damages alleged by the Plaintiffs are not insured under the policy, including "property damage to the crops, fields and land," "investigation costs and other costs related to crop destruction pursuant to 42 Pa. C.S.A. §8313, "lost earnings and earning capacity of the farm land", "inconvenience and discomfort", and "diminution in value of their property."  The Plaintiffs' attorney acknowledges that some of the Plaintiffs' claims include "loss not covered by insurance."  See bottom of page 2 of Exhibit 4 attached to the Complaint.  To the extent that the

7

Plaintiffs are seeking recovery for uninsured losses, the made whole doctrine is not applicable to such losses.

The alleged tortfeasor is Spectra Energy. Marked as Exhibit A to the Motion to Dismiss are the public announcements issued by Spectra Energy as to the subject gas explosion. These announcements are a matter of public record. Spectra Energy is a multi-billion dollar corporation. See Exhibit B to the Motion to Dismiss which is Form 10-Q that Spectra Energy filed with the United States Securities and Exchange Commission. A court can take judicial notice of properly-authenticated public disclosure documents filed with the SEC. See Oran v. Stafford, 226 F.3d 275 (3rd Cir. 2000).

In short, the alleged tortfeasor has sufficient liability coverage and/or assets to cover both the insurer's and/or insured's claims. There is no contractual mandate and no equitable reason in this case for State Farm to delay its subrogation right when it is apparent that the alleged tortfeasor has sufficient funds to make both it and its insured whole. State Auto's subrogation interest is a separate claim from that of the Plaintiffs, and State Auto can pursue its subrogation claim with counsel of its own choosing. Lastly, the Plaintiff alleges that State Auto "imminently intends" to enforce its subrogation interest against the tortfeasor. This case is not ripe for judicial review until such time as State Auto actually enforces its right of subrogation against the tortfeasor.

The elements of a statutory claim for bad faith are set forth at 42 Pa. C.S.A. §8371, which states as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1)   Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)   Award punitive damages against the insurer.

(3)   Assess court costs and attorney fees against the insurer.

Section 8371 does not define "bad faith" or specify what insurer actions will give rise to liability, and the Pennsylvania Supreme Court has yet to address these issues.   However, Pennsylvania courts have looked at whether the insurer lacked a reasonable basis for its actions and whether the insurer knew or recklessly disregarded its lack of a reasonable basis. *Terletsky v. Prudential Property and Casualty Ins. Co.,* 649 A.2d 680 (Pa. Super. 1994).  Mere negligence or bad judgment is not bad faith. *Zappile v. Amex Assurance Co.,* 928 A.2d 251 (Pa. Super. 2007); *Williams v. Nationwide Mutual Ins. Co.,* 750 A.2d 881 (Pa. Super. 2000).  Also, bad faith must be supported by clearing and convincing evidence.  See, *Terletsky,* supra.  Bad faith claims are fact specific and depend on the conduct of the insurer vis a vis the insured. *Williams v. Nationwide Mutual Ins. Co.,* supra.

In the subject case, State Farm had a reasonable basis for its action based on the case law cited above.   Therefore, the bad faith allegations in the second cause of action should be dismissed.

Whereas, the gist of the first cause of action of the Complaint involves State Auto's alleged imminent intent to enforce its subrogation rights against the alleged tortfeasor, which State Auto has a right to do, and whereas the gist of the second cause of action alleges that State Auto acted in bad faith by asserting that the made whole doctrine is inapplicable to the facts of this case, which is a legally correct assertion, the Complaint should be dismissed in its entirety.

For all of the above reasons, the Plaintiffs have failed to state a claim upon which relief can be granted and, consequently, both the first and second causes of action of the Complaint should be dismissed, with prejudice.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

Dated:  November 7, 2016

By: _Edward A. Schenck_

Chester A. Dudzinski, Esquire
Pa. I.D. No. 53456
cdudzinsk@c-wlaw.com
Edward A. Schenck, Esquire
Pa. I.D. No. 36605
eschenck@c-wlaw.com
650 Washington Road, Suite 700
Pittsburgh, PA 15228
(412) 563-2500

*Attorneys for Defendant,*
*State Automobile Mutual Insurance Company*

10

## CERTIFICATE OF SERVICE

The undersigned counsel for the Defendant, State Automobile Mutual Insurance Company, hereby certifies that a true and correct copy of the within *Brief in Support of Motion To Dismiss Plaintiffs' Complaint Pursuant To Rule 12(B)(6)* has been served on all counsel of record, through the ECF system, according to the Federal Rules of Civil Procedure, on the _____7th_____ day of November, 2016, as follows:

Gretchen E. Moore, Esquire
Strassburger McKenna Gutnick & Gefsky
Four Gateway Center
444 Liberty Avenue, Suite 2200
Pittsburgh PA  15222

Respectfully submitted,

CIPRIANI & WERNER, P.C.

By: _____
Chester A. Dudzinski, Esquire
Edward A. Schenck, Esquire
*Attorneys for Defendant,*
*State Automobile Mutual Insurance Company*

11