THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY GILLIS and WENDY GILLIS, individuals, | CIVIL ACTION |
| Plaintiffs, | Case No.: 2:16-cv-01285-MRH |
| v. | ***Electronically Filed and Served*** |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, an Ohio Corporation, | |
| Defendant. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**Introduction**

This is a declaratory judgment and bad faith action. Plaintiffs experienced a catastrophic loss as a result of a gas explosion from a pipeline located on their farm property. Plaintiffs are insured under an insurance policy with Defendant, State Automobile Mutual Insurance Company (the "**Defendant**"), that has covered only a small fraction of their loss. Through its actions, Defendant forced Plaintiffs to bring this lawsuit because Defendant has stated, unequivocally and in flagrant violation of Pennsylvania law, that it intends to pursue subrogation against the tortfeasor(s) before the tortfeasor(s) have made Plaintiffs whole. Defendant now seeks to dismiss Plaintiffs' Complaint. As explained below, Defendant's Motion should be denied because (i) Pennsylvania law requires that an insured be made whole before an insurer may demand subrogation or reimbursement from its insured's recovery or directly from a third-party tortfeasor; and (ii) Plaintiffs have adequately pleaded a claim for bad faith.

1

## Pertinent Allegations in Complaint

On April 29, 2016, Plaintiffs experienced a catastrophic loss as a result of a gas explosion from a pipeline located on their farm property. Doc. No. 1, ¶1. Plaintiffs submitted a claim under their policy to Defendant after the explosion. Doc. No. 1, ¶7. When the complaint was filed, Defendant had paid Plaintiffs $185,700.76, which is less than the policy limits and less than the amount of the claim, without any resolution of the claim. Doc. No. 1, ¶8.

Before and after payment, Defendant informed Plaintiffs that it intended to enforce subrogation rights against the tortfeasor(s) immediately following payment. Doc. No. 1, ¶9. Plaintiffs informed Defendant that its policy of insurance was insufficient to make them whole, and until they were made whole by the tortfeasor(s), Defendant had no subrogation right or interest to pursue. Doc. No. 1, ¶10.

On July 8, 2016, in an email exchange between counsel for Plaintiffs and Defendant, Defendant's counsel informed counsel for Plaintiffs that their position that "the insured must be made whole before [Defendant's] subrogation rights can be asserted is incorrect." Doc. No. 1, ¶11; *see* Doc. No. 1, Ex. 2. In a letter dated July 13, 2016, Defendant reasserted this position, stating that because Defendant believes sufficient funds exist to cover any uninsured claims, the made whole doctrine is not applicable. Doc. No. 1, ¶12; *see* Doc. No. 1, Ex. 3.

On July 22, 2016, counsel for Plaintiffs responded by letter setting forth their position that the made whole doctrine is applicable to this case and that Plaintiffs' rights cannot be trumped by Defendant's desire to get paid before the insured has been made whole. *See* Doc. No. 1, Ex. 4. On August, 8, 2016, counsel for Defendant responded by letter reinforcing the fact that it intends to seek subrogation before Mr. and Mrs. Gillis pursue their claims against the tortfeasor(s). Doc. No. 1, ¶14.

On August 22, 2016, Plaintiffs initiated the within action as a result of Defendant's actions. *See* Doc. No. 1.

## Legal Standard

"Under Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). "[A] complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n. 14 (2007)). "At this stage of the proceedings, the complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiffs' cause of action." *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007) (citation omitted). It is not appropriate to "inquire whether a plaintiff will ultimately prevail when considering a motion to dismiss, only whether the plaintiff is entitled to offer evidence to support his or her claims." *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). In sum, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *PA Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010).

## Argument

### I.      Defendant has no right to subrogation until Plaintiffs have been made whole.

In its Motion, Defendant contends that it may seek subrogation against the tortfeasor(s) before Plaintiffs are fully compensated for their losses (i.e., made whole). However, Defendant's interpretation of the made whole doctrine is in contravention to Pennsylvania law.

Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities..." *Watson v. Allstate Ins. Co.*, 28 F. Supp. 2d 942, 945 (M.D. Pa. 1998) (citing Black's Law Dictionary 1427 (6th ed.1990)).

"Subrogation is not an inflexible legal concept" but an exercise of equitable powers, and a court is to enforce subrogation interests with "a proper equitable discretion" and "with a due regard for the legal and equitable rights of others." *Daley-Sand v. W. Am. Ins. Co.*, 564 A.2d 965, 970 (Pa. Super. 1989).

To give effect to the equitable principles of subrogation, Pennsylvania endorses the "made whole" doctrine, which makes the insured's recovery of the **full amount** of his losses a precondition of an insurer's subrogation rights. *Heller v. Pa. League of Cities & Municipalities*, 32 A.3d 1213, 1219 n.12 (Pa. 2011); *see also Jones v. Nationwide Prop. & Cas. Ins. Co.*, 32 A.3d 1261, 1270-1271 (Pa. 2011) ("where an insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, it is only **after** the insured has been **fully compensated** for all the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights") (emphasis added); *Professional Flooring Co., Inc. v. Bushar Corp.*, 1594 EDA 2015, __ A.3d __, 2016 WL 7105899 at *8 (Pa. Super. Ct. Dec. 6, 2016) (noting that the "made whole" doctrine is "controlling law in Pennsylvania" in a case where, unlike here, an insurer paid a first-party property damage claim and acknowledged, in writing, its right to pursue the tortfeasor did not arise until its insured was made whole); *Walls v. City of Pittsburgh*, 436 A.2d 698, 701 (Pa. Super. 1981) (holding that the insurer's right to subrogation arises "only upon the insurer's showing that the sum of the insured's recovery from the insurer and from persons legally responsible for the injury exceeds the insured's loss"); *Gallop v. Rose*, 616 A.2d 1027, 1031 (Pa. Super. 1992), *appeal denied* 629 A.2d 1380 (Pa. 1993) (holding that insurance company "had no equitable right to subrogation until [insurer's] **total damages** were ascertained and recouped") (emphasis added); *Nationwide Mut. Ins. Co. v. DiTomo*, 478 A.2d 1381, 1383 (Pa. Super. 1984) (affirming grant of summary judgment because "subrogation was impermissible as [the insured]

4

had not been **fully compensated**") (emphasis added). Because Plaintiffs have not been fully compensated for their loss, Defendant may **not** assert its subrogation rights under Pennsylvania law. *See Lexington Ins. Co. v. Q-E Mfg.*, Co., No. CIV. 1:06-CV-0437, 2006 WL 2136244, at *2 (M.D. Pa. July 28, 2006) ("The 'made whole' doctrine provides that the subrogation right of an insurer is... lower in priority to all other claims against a source of compensation to the insured until the insured has been **fully compensated**") (emphasis added).

In its Motion, Defendant extracts a passage from *Jones v. Nationwide Prop. & Cas. Ins. Co.*, to support its argument that the made whole doctrine is only applicable in cases where there are insufficient funds to satisfy both the insured and the insurer. Doc. No. 7, ¶17. In *Jones*, the Pennsylvania Supreme Court reviewed a completely different question than that presented here. The question in *Jones* was whether a collision deductible in an auto insurance policy needs to be fully reimbursed in order to make an insured whole. *Jones*, 32 A.3d at 1272. The court determined that the made whole doctrine could not apply to the deductible because the deductible amount was a risk the insured agreed to bear. Forcing the insurer to defer its rights until the insured recovered its deductible would essentially shift the risk to the insurer, when the policyholder has not paid a premium to cover that risk. *Id.*

Contrary to Defendant's assertion, *Jones* does not stand for the proposition that the made whole doctrine is only applicable in cases where there are insufficient funds to satisfy both the insured and the insurer. Indeed, the *Jones* court reaffirmed the fact that the made whole doctrine applies generally in Pennsylvania and that the insured must be **fully compensated** for all loss before the insurer acquires a right to subrogation. *See Id.* at 1271 ("it is only after the insured has been fully compensated for all the loss that the insurer acquires a right to subrogation, or is entitled to enforce its subrogation rights.")

State Auto has manipulated the "insufficient funds" language in *Jones* for its own, self-interested purpose. The insured is not required to prove the insolvency of the tortfeasor to prevent the insurer from exercising its subrogation rights, any more than the carrier is required to prove the solvency of the tortfeasor in order to pursue subrogation. The made whole doctrine is a prophylactic rule designed to shift the risk of loss from the policyholder to the insurer in the event the tortfeasor *might* be insolvent, not whether it actually is insolvent. This feature of Pennsylvania law is entirely unremarkable, and bears a striking similarity to the common law rule of joint and several liability, which still exists in certain circumstances in Pennsylvania. At common law, where two tortfeasors contribute to a loss, both are liable for the whole, even if the fault of one exceeds the fault of the other, and the plaintiff may recover the entire amount of the loss from only one of the tortfeasors. According to the Supreme Court of Pennsylvania, "common law joint and several liability evolved on the theory that, as between an injured, innocent plaintiff and defendants whose breach of some duty is proximately related to the injury, it is preferable to allocate the *risk of a default in the payment of due compensation* to the defendants." *Harsh v. Petroll*, 887 A.2d 209, 217 (Pa. 2005); *see also Maloney v. Valley Medical Facilities, Inc.*, 984 A.2d 478, 489 (Pa. 2009) ("The policy justification for allocating 100 percent liability (from the plaintiff's perspective) to one who bears only, say, 60 percent of the responsibility is that, as between an innocent injured party and a culpable defendant, the defendant should bear the *risk of additional loss*."). Similarly, the made whole doctrine shifts the risk of non-recovery to the carrier by preventing its subrogation interest from ripening until its policyholder has been made whole. The doctrine has nothing to do with the actual finances of the tortfeasor. Defendant's argument to the contrary should be rejected.

Defendant also cites *State Farm Mut. Auto Ins. Co. v. Ware's Van Storage*, 953 A.2d 568 (Pa. Super. 2008), for the proposition that "once payment is made, the unity of the insurer's interest with that of its insured is eliminated, rendering the parties' interest in litigation qualitatively dissimilar." Doc. No. 7, ¶18. In *Ware's Van Storage*, however, the insurance company **fully compensated** the insured for its property damage and then filed a complaint against the tortfeasor **after** the insured filed a complaint against the tortfeasor, seeking only personal injury damages and **not** the property damage that was paid by insurer. *Ware's Van Storage*, 953 A.2d at 569. In the separate suit, the insurance company sought to recoup payment for the property damage only. *Id*. In that situation, the court found that the Pennsylvania Rules of Civil Procedure governing joinder were not violated. *Id*. at 573. The present case does not involve full compensation of the policyholder, nor does it involve procedural questions under state law. Accordingly, *Ware's Van Storage* has nothing to do with this case at all.

In short, Plaintiffs experienced catastrophic and extensive property damage in this case, intend to pursue all available causes of action, and seek all available damages, against the tortfeasor(s). Pursuant to Pennsylvania law, Defendant cannot step in and "split" Plaintiffs' property damage claims against the tortfeasor before Plaintiffs have been made whole and thereby waste judicial resources to the detriment of its insureds. *Gallop*, 616 A.2d at 1031. Because the made whole doctrine precludes Defendant from pursuing subrogation claims against the tortfeasor(s) until Plaintiffs are fully compensated for all loss, the Court should deny Defendant's Motion to Dismiss

## II.    Plaintiff has pleaded facts supporting Defendant's bad faith conduct.

Count Two of Plaintiffs' Complaint sets forth a cause of action of bad faith against Defendant. Specifically, the Complaint alleges that Defendant flouted and repudiated the rights of

Plaintiffs, and prioritized its interest over Plaintiffs' interests, by expressing its intention to seek reimbursement from the tortfeasor(s) immediately, without regard to whether Plaintiffs have been made whole. Doc. No. 1, ¶21. The Complaint also alleges that Defendant's conduct jeopardized the rights of Plaintiffs to full recovery for its losses. Doc. No. 1, ¶22. These allegations, which must be accepted as true in ruling on Defendant's Motion, adequately state a claim under the Pennsylvania bad faith statute, 42 Pa.C.S. § 8371.

A bad faith claim under section 8371 exists separate and apart from a contract claim, and whether benefits have been paid or not paid. *Hamm v. Allstate Property & Cas. Ins. Co.*, 908 F.Supp.2d 656, 669 (W.D. Pa. 2012) (Hornak, J.). Although most bad faith cases involve coverage denials, here we have a different breed of bad faith – repudiation of an insured's preferential right to recover from a tortfeasor. To state a claim under § 8371, plaintiffs must allege facts from which the court can draw the plausible inference that defendant: (1) had no reasonable basis upon which to assert subrogation rights before its insureds were made whole; and (2) knew about or recklessly disregarded its lack of a reasonable basis for its subrogation position. "The insured must also show that the insurer breached a known duty (i.e., the duty of good faith and fair dealing) through a motive of self-interest or ill will." *Papurello v. State Farm Fire & Cas. Co.*, 144 F.Supp.3d 746, 774-75 (W.D. Pa. 2015)

Plaintiffs have pleaded a powerful bad faith claim. In paragraphs 30 and 32 of the Complaint, they have alleged that Defendant intentionally took an unreasonable legal position, motivated by self-interest, in an effort to recover its payment to Plaintiffs by expressing an intention to pursue subrogation prematurely. It is a simple theory, it is correct under the law, and therefore it should be allowed to proceed. As set forth above, Plaintiff's interpretation of the made whole doctrine is incontrovertible and has been settled Pennsylvania law for decades. Defendant

has simply elevated its interest in recovering its payment, and stopping the loss of investment

income on the payment, over the interests of insureds to be made whole.  That is precisely the kind

of conduct 42 P.S. § 8371 was intended to address.

### Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.


Respectfully submitted,

STRASSBURGER MCKENNA GUTNICK
& GEFSKY

Date:  12/12/16                              By:        /s/ Gretchen E. Moore
                                                        David A. Strassburger
                                                        PA. I.D. No. 76027

                                                        Gretchen E. Moore
                                                        PA I.D. No. 202103

                                                        *Counsel for Plaintiffs*

9